UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| HARRIET M. BURBANK, | ) |
| :--- | :--- |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:14CV00098 JAR |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Harriet Burbank's ("Burbank") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq.

### I. Background

On June 13, 2011, Burbank protectively filed an application for disability insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* (Tr. 125-27) The Social Security Administration ("SSA") denied her claim on October 4, 2011. (Tr. 68) Burbank filed a timely request for a hearing before an administrative law judge ("ALJ") on November 14, 2011. (Tr. 78-80) Following a hearing on July 24, 2012 (Tr. 24-56), the ALJ issued a written decision on October 22, 2012, upholding the denial of benefits. (Tr. 10-20) Burbank requested review of the ALJ's decision by the Appeals Council. (Tr. 7) On November 21, 2013, the Appeals Council denied Burbank's request for review. (Tr. 1-6) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Burbank filed this appeal on January 20, 2014. (Doc. 1) The Commissioner filed an Answer. (Doc. No. 10) Burbank filed a Brief in Support of her Complaint. (Doc. No. 14) The Commissioner filed a Brief in Support of the Answer. (Doc. No. 19) Burbank filed a Reply Brief. (Doc. No. 20)

## II.   Decision of the ALJ

The ALJ determined that Burbank meets the insured status requirements of the Social Security Act through December 31, 2016, and had not engaged in substantial gainful activity since April 1, 2011, the alleged onset date of disability. (Tr. 13) The ALJ found Burbank had the severe impairments of renal failure, arthralgia,[1] and headaches, and the non-severe impairment of depression, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14)

After considering the entire record, the ALJ determined Burbank had the residual functional capacity ("RFC") to perform the full range of sedentary work. (Tr. 14-19) The ALJ found Burbank capable of performing her past relevant work as a call operator. (Tr. 19) Thus, the ALJ concluded that a finding of "not disabled" was appropriate. (Id.)

Burbank appeals, contending the ALJ improperly concluded that her depression was not a severe impairment and failed to apply the Medical-Vocational Guidelines to find her disabled. The Commissioner maintains that the ALJ's decision was supported by substantial evidence on the record as a whole.

## III.   Administrative Record

The following is a summary of the relevant evidence before the ALJ.

---

[1] A sharp, severe pain, extending along a nerve or group of nerves, experienced in a joint and/or joints. (http://medical-dictionary.the freedictionary.com/arthralgia (last visited Dec. 30, 2014).

2

A.  Hearing Testimony

The ALJ held a hearing in this matter on July 24, 2012. The ALJ heard testimony from Burbank and Tracy Young, a vocational expert.

1.  Burbank's testimony

Burbank was 55 years old at the time of the hearing and living with her brother and his wife. (Tr. 29, 39) She has a GED. (Tr. 30) She last worked for four years as an assistant manager for Dollar General. (Tr. 30-32) She testified that she had planned to take medical leave on May 29, 2011 because of an artery closing up in her brain, but was fired on May 25, 2011. (Tr. 40-41) Before that she worked for three years at a Citgo gas station, running the cash register. She lost that job when the owner sold off the stations. (Tr. 32-33) Burbank also worked at Save-A-Lot for two years as a cashier and stocker until she was laid off. (Tr. 33) She worked for a year at Cedar Hill Pawn Shop, running the store. (Tr. 34) She worked for Convergys taking internet orders for cell phones. She left that job because she and her supervisor had differences. (Tr. 35) Finally, Burbank worked as an officer manager for Davidson Surface Air, a freight company. On occasion she would drive a truck to deliver smaller packages. (Tr. 36)

It was Burbank's testimony that she is in severe pain all day long; any activity, i.e., standing, walking, sweeping, mopping, triggers back pain and keeps her from working. (Tr. 37, 45) She can stand for 10 to 15 minutes before needing to sit down. She has to sit for at least a half hour before standing again. (Tr. 46) She has difficulty climbing steps due to a swollen knee. (Tr. 38) In addition, if she sits for more than 5 to 10 minutes, then her back starts hurting and the pain goes down her legs. (Tr. 37-38) Burbank stated she needs at least five to six unscheduled breaks during a workday because of her back pain. (Tr. 48) She can only lift the equivalent of a gallon of milk or bleach, but not frequently. (Tr. 38, 46-47) It was her testimony that she cannot

3

work at the call center for Convergys because she can't sit long enough. (Tr. 42-43) Burbank testified she has difficulty dealing with people when she is in pain and has trouble remembering things, although she attributed her forgetfulness to her age. (Tr. 38-39) She estimates she is off task because of concentration problems due to her physical symptoms at least half of an eight hour shift. (Tr. 49)

In a typical day, Burbank helps her brother and his wife with household chores, such as dishes and laundry. (Tr. 39) She naps every afternoon because the pain drains her of energy. (Tr. 48) She used to enjoy playing darts, bowling and co-ed softball, but can't do any of that anymore. (Id.) Burbank has a driver's license and can drive. (Tr. 29) Burbank stated she was not seeing any doctors, because she couldn't afford medical insurance. (Tr. 40) She talked to the doctor about low-cost options and was told there was nothing available to her. (Tr. 41) The only medication she takes is Advil. (Id.)

Burbank's medical conditions include an artery closing up in her brain, scoliosis of the spine, and two deteriorating discs in her lower back at L4 and L5. (Tr. 44) In the last two years Burbank has been to the hospital three times for her kidneys. (Tr. 42) It was her testimony that she learned from her attorney that she has kidney disease. Burbank's attorney stated that the medical record reflects Stage 3 renal failure. (Tr. 41-42) Burbank stated she always knew there was something wrong with her kidneys. When she went to the hospital in April 2012, she was told her kidneys were shutting down and that she would need dialysis if the condition did not improve. (Tr. 44) Because of her kidney condition, Burbank needs to use the bathroom frequently, that is, three times every half hour. (Tr. 41-42, 49) She is also borderline diabetic. (Tr. 45)

2.    **Testimony of Vocational Expert**

Vocational expert, Tracy Young, testified regarding Burbank's vocational history, with skill and exertion levels, as follows. Young characterized Burbank's call center job as an order filler, Dictionary of Occupational Titles ("DOT") number 249.362-026. This is a sedentary, semi-skilled job with a specific vocational preparation ("SVP") of 4. (Tr. 51, 52-53) Burbank has also been an office manager, DOT number 219.362-010. This is a light, semi-skilled job with an SVP of 4. (Tr. 51-52) She has been an assistant manager, DOT number 189.167-018, light, skilled, with an SVP of 6, and a convenience store clerk, DOT number 211.462-010, light, unskilled and performed as medium with an SVP of 2. (Tr. 52) Burbank has been a cashier stocker, DOT number 290.477-014, light, semi-skilled with an SVP of 3. (Id.) Finally, Burbank has been a pawn broker, DOT number 191.157-010, light, skilled with an SVP of 6, although she was acting more as clerk under close supervision, so Young lowered the position to semi-skilled with an SVP of 4. (Id.)

Young was examined by Burbank's attorney, who posed a hypothetical assuming a person of the claimant's age, education, and past work experience limited to sedentary work and able to lift no more than two pounds frequently and no more than five pounds occasionally. In addition, that individual would have to take bathroom breaks three times every 30 minutes, possibly in the range of two to three per hour, and five to six unscheduled breaks during the workday. Young opined that such a person would be unable to perform any jobs in the labor market. (Tr. 54)

### B. Medical Records

The ALJ summarized Burbank's medical records at Tr. 17-19. Relevant medical records are discussed as part of the analysis.

### IV. Standards

5

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

6

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. The Commissioner may refer to the Medical-Vocational Guidelines, or "Grids," 20 CFR Part 404, Subpart P, Appendix 2,[2] to meet this burden. Pearsall

---

[2] The Grids "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." Phillips v. Astrue, 671 F.3d 699, 702 (8th Cir. 2012). "If the ALJ's

7

v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

   (1) The findings of credibility made by the ALJ;
   (2) The education, background, work history, and age of the claimant;
   (3) The medical evidence given by the claimant's treating physicians;
   (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
   (5) The corroboration by third parties of the claimant's physical impairment;
   (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
   (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

### V. Discussion

---

findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." Id. (quoting Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir. 1993)).

8

In her appeal of the Commissioner's decision, Burbank raises two issues. First, she alleges the ALJ failed to consider and weigh the opinions of the consultative examiner, F. Timothy Leonberger, Ph.D., and state agency psychologist, Steven Akeson, Psy.D., both of whom concluded that she had severe depression. (Doc. No. 14 at 5-10) Second, Burbank argues the Grids direct a finding of disabled for a person with her vocational profile who is limited to sedentary, unskilled work. (Id. at 11) Because the ALJ erred in failing to properly consider the opinions of Drs. Leonberger and Akeson, the Court will only address that issue.

Dr. Leonberger opined that Burbank had dysthymic disorder[3] that caused mild to moderate impairment in functional limitations. Specifically, her activities of daily living were moderately impaired, her social functioning was mild to moderately impaired, and her concentration, persistence, and pace were "marginal." (Tr. 240-41) Her mental status examination showed rapid speech, an "edgy" affect, and a mildly depressed mood. (Tr. 239-40) The ALJ indicated that she "accept(ed)" the opinion of the psychologist in the consultative evaluation (Tr. 19); however, she did not include the limitations identified in Dr. Leonberger's opinion in her mental RFC finding, or explain why she did not include it.

Similarly, Dr. Akeson found Burbank had a severe affective disorder.[4] (Tr. 61) He opined that Burbank had moderate limitations in her activities of daily living, mild limitations in social functioning, and moderate limitations in concentration, persistence, and pace. (Tr. 62) Dr. Akeson's mental RFC opinion included moderate limitations in understanding, remembering,

---

[3] Dysthymia (dysthymic disorder) is a mild but long-term (chronic) form of depression. (http://www.mayocliinic.org/diseases-conditions/dysthymia/basics/definition (last visited January 6, 2015)).

[4] Affective disorders are a set of psychiatric diseases, also called mood disorders. The main types of affective disorders are depression, bipolar disorder, and anxiety disorder. Symptoms vary by individual, but they typically affect mood. They can range from mild to severe. (http://www.healthline.com/health/affective-disorders#Overview (last visited January 6, 2015)).

and carrying out detailed instructions, interacting with the general public, and accepting instruction and responding appropriately to supervision. (Tr. 63-64) The ALJ did not indicate what weight she gave to Dr. Akeson's opinion.

RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of her limitations. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir.2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. See Lauer v. Apfel, 245 F .3d 700, 704 (8th Cir.2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir.2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See Lauer, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); Casey v. Astrue, 503 F.3d 687, 697 (8th Cir.2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir.2006).

In evaluating medical opinion evidence, the Social Security regulations require the ALJ to explain in the decision the weight given to any opinions from treating sources, nontreating sources and nonexamining sources. See 20 CFR 404.1527(e)(2)(ii); Holden v. Astrue, 2011 WL 2730914, at *35 (E.D. Mo. June 15, 2011) (where ALJ acknowledged consulting physician's examination of plaintiff but failed to explain what weight, if any, he gave to the physician's opinion evidence, such failure was error). The regulations further provide that the ALJ "will always give good reasons in [the] notice of determination or decision" for the weight given to those opinions. Sluka v. Colvin, 2014 WL 4814687, at *11 (E.D.Mo. Sept. 24, 2014) (quoting 20

C.F.R. § 404.1527(c)(2). When this is not done, the Court cannot properly review the ALJ's decision for substantial evidence.

The Commissioner acknowledges that the ALJ did not explicitly consider Dr. Akeson's opinion and appears to have made inconsistent findings regarding Dr. Leonberger's opinion. (Doc. No. 19 at 5, 8) Nevertheless, the Commissioner argues that the ALJ's findings are supported by substantial evidence on the record as a whole and can be affirmed. (Doc. No. 19 at 5) "While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." O'Coin v. Colvin, 2014 WL 4681381, at *12-13 (E.D.Mo. Sep. 19, 2014) (quoting Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir.2005)).

Drs. Leonberger and Akeson opined that Burbank suffered from mild to moderate impairment in functional limitations due to a mood disorder. These opinions lend support to Burbank's allegations of a severe mental impairment. The ALJ's failure to consider and weigh the opinions of Drs. Leonberger and Akeson creates uncertainty and casts doubt on the ALJ's rationale for denying Burbank's claims. See Willcockson v. Astrue, 540 F.3d 878, 879-80 (8th Cir.2008). Because the Court cannot determine from the ALJ's decision whether she properly reviewed the medical evidence of record, the matter must be remanded.

**Conclusion**

Based on the foregoing, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand, the ALJ is directed to further develop the record to include additional consideration and evaluation of the opinions received from Drs. Leonberger and Akeson, formulate a new RFC for Burbank based

on the medical evidence in the record, and further develop the medical record if necessary; and then to continue with the next steps of the sequential evaluation process.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Order.

Dated this 30th day of March, 2015.

                                                                    */s/ John A. Ross*
                                                           **JOHN A. ROSS**
                                                  **UNITED STATES DISTRICT JUDGE**